E-FILED
Thursday, 27 September, 2007  01:48:10 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CLEVE HEIDELBERG, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07-1169 |
| JOHN CHAMBERS, | ) ) | The Honorable Joe Billy McDade, |
| Respondent. | ) | Judge Presiding. |

---

## RESPONDENT'S MOTION TO DISMISS HABEAS PETITION AS SUCCESSIVE

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] 28 U.S.C. § 2244(b)(1), and this Court's August 2, 2007 order, respondent JOHN CHAMBERS moves to dismiss petitioner's petition for writ of habeas corpus as successive, and states as follows:

1.       Petitioner, Cleve Heidelberg, identified as prisoner number C01521, is in

---

[1] Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts contemplates that the respondent's response to the petition may be by "motion, or other response." In this vein, the Committee Notes explain that where a "dismissal may be called for on procedural grounds," a response by motion could "avoid burdening the respondent with the necessity of filing an answer on the substantive merits of a petition." Advisory Committee Notes to Rule 4, 1976 Adoption. This reasoning remains in force following the 2004 amendments to Rule 4. *See* Advisory Committee Notes to Rule 4, 2004 Amendments ("[t]he amended rule [4] reflects that the response to the habeas petition may be a motion"). *See also* Advisory Committee Notes to Rule 5, 2004 Amendments (Rule 4 permits the filing of pre-answer motions to dismiss, and "reflects the view that if the court does not dismiss the petition, it may require (or permit) the respondent to file a motion").

the custody of John Chambers, Warden of the Danville Correctional Center, in Danville, Illinois.

2.      In December 1970, petitioner was convicted in the Circuit Court of Peoria County of murder and attempted armed robbery.  *See* Pet. at i, ¶4; *see also* Exh. B at 1 (28 U.S.C. § 2254 petition in *Heidelberg v. Briley*, No. 03 C 4997, United States District Court for the Northern District of Illinois).   Petitioner received concurrent indeterminate sentences of 99 to 175 years and 4 2/3 to 14 years for the murder and attempted armed robbery convictions, respectively.  *See* Pet. at i, ¶3; Exh A at 1026 (*Heidelberg and Sharp v. Illinois Prisoner Review Board et al.*, 163 F.3d 1025 (7th Cir. 1998)); Exh. B at 1.

3.      Subsequently, in state court, petitioner attacked his sentence, claiming that he was improperly sentenced, and therefore, was entitled to release on parole. Indeed, petitioner has filed multiple unsuccessful petitions with the Illinois Prison Review Board seeking early release.  *See* Pet. at ii, ¶10(G); Exh. A at 1026.  Failing to obtain relief in state court, petitioner sought federal habeas relief in 1997, asserting that he was improperly denied parole under Illinois's parole statute.  *See* Pet. at ii, ¶10(G);  Exh. A at 1025-1027.[2]   Petitioner's petition was dismissed by the district court, and the Seventh Circuit issued an opinion denying his request for a certificate of appealability.  *See id.*

_____

[2]   Petitioner filed a federal habeas petition prior to his 1970 trial and immediately after his trial, but they were dismissed for failure to exhaust his state remedies.  *See* Exh. C at 5, n.4 (September 16, 2003 order denying habeas relief in *Heidelberg v. Briley*, No. 03 C 4997).

4.    In 2003, in District Court for the Northern District of Illinois, petitioner filed another § 2254 petition under Docket No. 03 C 4997, this time attacking his underlying state convictions, and asserting that:

(1)    the State suppressed evidence; and

(2)    he was actually innocent.

*See* Pet. at ii, ¶10(F); *see also* Exh. B.  Because petitioner had not raised claims attacking his underlying state convictions in his previous petition, the district court found that petitioner's second § 2254 was not successive, holding instead that it was untimely under 28 U.S.C. § 2244(d)(2).  *See* Exh. C at 8. (September 16, 2003 order denying habeas relief in *Heidelberg v. Briley*, No. 03 C 4997).

4.    On June 22, 2007, petitioner filed the instant petition for habeas corpus relief under 28 U.S.C. § 2254, asserting that he is entitled to release because the state sentence he received violated the ex post facto clause of the Constitution and is contrary to *Weaver v. Graham*, 450 U.S. 24 (1981).  *See* petitioner's supporting habeas brief. However, the petition should be dismissed because the Seventh Circuit has not authorized its filing and this Court, therefore, does not have jurisdiction to entertain it.

5.    Respondent is attaching the following materials as exhibits to his motion to dismiss:

Exhibit A:    Opinion in *Heidelberg and Sharp v. Illinois Prisoner Review Board et al.*, 163 F.3d 1025 (7th Cir. 1998);

Exhibit B:     Federal habeas petition in *Heidelberg v. Briley*, No. 03 C 4997, United States District Court for the Northern District of Illinois; and

Exhibit C:     September16, 2003 order denying habeas relief in *Heidelberg v. Briley*, No. 03 C 4997.

## **ARGUMENT**

A habeas petitioner must file a motion in the court of appeals for authorization to file a successive federal habeas petition before the petition may be filed in the district court. 28 U.S.C. § 2244(b)(3)(A). Because the instant petition is a successive habeas petition for which petitioner neither sought nor received permission from the Seventh Circuit to file, this Court lacks jurisdiction to consider it and should dismiss the petition.

The instant petition should be dismissed by this Court for want of jurisdiction because it is a successive petition attacking the same underlying conviction and sentence that were the subjects of his 1997 and 2003 petitions. *See* Exhs. A, B. Section 28 U.S.C. § 2244 establishes a stringent set of procedures that a prisoner "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), must follow if he wishes to file a "second or successive" habeas corpus application challenging that custody. *Burton v. Stewart*, 127 S.Ct. 793, 796 (2007). Before filing the application in the district court, a prisoner "shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." § 2244(b)(3)(A). A three-judge panel of the court of appeals may authorize the filing of a second or successive application only if it presents a claim not previously raised that satisfies the grounds articulated in § 2244(b)(2). 28 U.S.C. § 2244(b)(3)(C); *Burton*, 127 S.Ct. at 796.

4

"A district court *must* dismiss a second or successive petition, without awaiting any response from the government, unless the court of appeals has given its approval for its filing." *Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996) (emphasis in original). From the district court's point of view, prior approval is an allocation of subject matter jurisdiction to the court of appeals. *Id.*

Both of petitioner's previous petitions count as prior applications because both originated from the same State court judgment that he complains of in the instant petition. In petitioner's 1997 § 2254 petition, he sought early release from state custody, claiming he was entitled to release because the State had wrongly denied him parole. *See* Exh. A. In the instant petition, he again raises a claim centered around his belief that he has been wrongly denied early release. *See* petitioner's supporting brief at 7, 8 ("Therefore [730 ILCS 5/3-3-2.1(b)] is plainly to petitioner's substantial disadvantage where it eliminated his early release opportunity . . ."), and 9 ("Beyond any speculation, it can be plainly & clearly observed that 730 ILCS 5/3-3-2.1(b) constitutes an ex post facto law due to the fact that the law annexed to petitioner's crimes guaranteed his eligibility for early release).[3] Thus, even if the 1997 petition did not challenge his conviction (compare *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997), the present habeas petition reasserts a claim asserted in the earlier petition, namely, he is entitled early release from his state conviction. Accordingly, petitioner would need

---

[3] Moreover, petitioner offers no reason why he only now raises this claim when the law he attacks was enacted in 1978 (*see* petitioner's supporting brief at 6) and the case he relies on, *Weaver v. Graham*, 450 U.S. 24 (1981) was decided in 1981.

5

the Seventh Circuit's permission for his filing pursuant to 28 U.S.C. § 2244 (b)(1) and (3)(A).

In any event, there can be no doubt that petitioner's 2003 § 2254 application attacked his underlying conviction (*see* Exhs. B and C), the same state court judgment that the instant petition challenges. For this reason alone, this Court has no jurisdiction over the petition, and it should be dismissed.

Petitioner's previous habeas petitions removed jurisdiction over the instant petition from this Court. If a first application is dismissed or returned because of a technical deficiency (for example, where the petition is filed prematurely, or in the wrong district, or without payment of the filing fee), then the dismissal is not final and therefore without prejudice, and does not count as the first petition. *Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005). But where, as here, a prisoner has had (at least) "one clean shot" at establishing his entitlement to federal habeas corpus relief, he is precluded from filing a second or subsequent petition without first seeking approval from the court of appeals. *Id*. Even if this Court finds petitioner's 1997 petition did not constitute an attack on his underlying state conviction for the purposes of 28 U.S.C. § 2244, at minimum, petitioner's 2003 petition was his "one clean shot" at challenging his state conviction; it attacked the same judgment that he attacks with the instant petition. This constitutes a violation of the AEDPA's strict requirements regarding successive petitions. *See Burton*, 127 S.Ct. at 796 (district court without jurisdiction to entertain second habeas petition when petitioner had brought claim contesting the same custody imposed by the same judgment of a state court). Any

6

claim that petitioner makes regarding the propriety of the instant petition must be made to the Seventh Circuit; this Court lacks jurisdiction to consider petitioner's claims. *Id.*

Accordingly, the instant petition is a successive petition, and petitioner has neither sought nor obtained leave from the court of appeals to file it. Because he did not do so, this Court is without jurisdiction to entertain it. *Burton*, 127 S.Ct. at 796; *Nunez*, 96 F.3d at 991.

.

## <u>CONCLUSION</u>

Based on the foregoing, respondent respectfully requests that this Court dismiss petitioner's successive petition for writ of habeas corpus.  If this Court determines that this habeas petition is not successive, respondent respectfully requests an opportunity to raise any procedural defenses and/or respond to the merits of the claims in a subsequent submission.

September 27, 2007                              Respectfully submitted,

                                               LISA MADIGAN

                                               Attorney General of Illinois

                              By:      s/Russell K. Benton_____
                                       RUSSELL K. BENTON, Bar # 6203142
                                       100 West Randolph Street, 12th Floor
                                       Chicago, Illinois 60601
                                       PHONE: (312) 814-2113
                                       FAX: (312) 814-5166
                                       E-MAIL: Rbenton@atg.state.il.us

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2007, I electronically filed this **Motion to Dismiss** with the Clerk of the United States District Court for the Central District using the CM/ECF system. I also certify that on September 27, 2007, I mailed by United States Postal Service, the document to the following non-registered participant:

Cleve Heidelberg, # C01521
Danville Correctional Center
3820 E. Main Street
Danville, Illinois 61834

_____

**E-FILED**
Thursday, 27 September, 2007 01:48:48 PM
Clerk, U.S. District Court, ILCD

*Westlaw.*

163 F.3d 1025
163 F.3d 1025
**(Cite as: 163 F.3d 1025)**

Page 1

**H**
Heidelberg v. Illinois Prisoner Review Bd.
C.A.7 (Ill.),1998.

United States Court of Appeals,Seventh Circuit.
Cleve**HEIDELBERG** and Bruce Sharp,
Petitioners-Appellants,
v.
ILLINOIS PRISONER REVIEW BOARD and
Kenneth P. Dobucki, Respondents-Appellees.
No. 98-1653.

Submitted Aug. 31, 1998.
Decided Dec. 17, 1998.

State prisoners who were denied parole brought habeas corpus petition. The United States District Court for the Northern District of Illinois, Charles R. Norgle, Sr., J., dismissed petition. On prisoners' request for a certificate of appealability, the Court of Appeals held that Illinois' parole statute does not create a legitimate expectation of parole that would support due process claim, overruling *Scott*, 669 F.2d 1185.

Denied.
West Headnotes
**[1] Habeas Corpus 197 ⟜818**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)1 In General
                197k817 Requisites and Proceedings for Transfer of Cause
                    197k818 k. Certificate of Probable Cause. Most Cited Cases
Applicant who seeks certificate of appealability in connection with habeas corpus petition must make a substantial showing of the denial of a constitutional right before applicant may appeal from denial of request for relief. 28 U.S.C.A. § 2254.

**[2] Pardon and Parole 284 ⟜46**

284 Pardon and Parole
    284II Parole
        284k45 Authority or Duty to Grant Parole or Parole Consideration
            284k46 k. Parole as Right or Privilege. Most Cited Cases
There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.

**[3] Constitutional Law 92 ⟜4838**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)12 Other Particular Issues and Applications
                92k4838 k. Parole. Most Cited Cases
                (Formerly 92k272.5)

**Pardon and Parole 284 ⟜46**

284 Pardon and Parole
    284II Parole
        284k45 Authority or Duty to Grant Parole or Parole Consideration
            284k46 k. Parole as Right or Privilege. Most Cited Cases
A state creates an expectation of release that rises to the level of a liberty interest in parole, within the meaning of the due process clause, if its parole system requires release whenever a parole board or similar authority determines that the necessary prerequisites exist. U.S.C.A. Const.Amend. 14.

**[4] Courts 106 ⟜91(1)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling or as Precedents
                106k91 Decisions of Higher Court or Court of Last Resort
                    106k91(1) k. Highest Appellate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT A**

163 F.3d 1025
163 F.3d 1025
**(Cite as: 163 F.3d 1025)**

Page 2

Court. Most Cited Cases
When a precedent of the United States Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving the Supreme Court the prerogative of overruling its own decisions.

**[5] Constitutional Law 92 ⇐4838**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)12 Other Particular Issues and Applications
                92k4838 k. Parole. Most Cited Cases
    (Formerly 92k272.5)

**Pardon and Parole 284 ⇐46**

284 Pardon and Parole
    284II Parole
        284k45 Authority or Duty to Grant Parole or Parole Consideration
            284k46 k. Parole as Right or Privilege. Most Cited Cases
Illinois' parole statute does not create a legitimate expectation of parole that would support due process claim, but instead vests complete discretion in parole board outside of those specified instances when denial of parole is mandatory; overruling *Scott v. Illinois Parole and Pardon Bd.,* 669 F.2d 1185. U.S.C.A. Const.Amend. 14; S.H.A. 730 ILCS 5/3-3-5(c).

**[6] Federal Courts 170B ⇐382.1**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(B) Decisions of State Courts as Authority
            170Bk382 Court Rendering Decision
                170Bk382.1 k. In General. Most Cited Cases

**Federal Courts 170B ⇐386**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(B) Decisions of State Courts as Authority
            170Bk386 k. State Constitutions and Statutes, Validity and Construction. Most Cited Cases
Federal Court of Appeals is bound to follow a state's highest court's interpretation of its own state law.

**\*1025 CleveHeidelberg,** Graham Correctional Center, pro se.
Bruce Sharp, Graham Correctional Center, pro se.
Deborah L. Ahlstrand, Office of the Attorney General, Civil Appeals Division, State of Illinois Center, Chicago, IL.

Before FLAUM, KANNE, and EVANS, Circuit Judges.[FN*]

> FN* This opinion was circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e). No judge favored a rehearing en banc on the question of overruling *Scott v. Illinois Parole and Pardon Bd.,* 669 F.2d 1185 (7th Cir.1982).

PER CURIAM.
[1] Like all applicants who seek certificates of appealability, **CleveHeidelberg** and Bruce Sharp must make a substantial showing of the denial of a constitutional right before they may appeal from the denial of their joint request for relief under 28 U.S.C. § 2254. The petitioners attempt to make the requisite showing by claiming, principally, that the Illinois Prisoner Review Board (Board) deprived them of due process by denying them parole. We write today to **\*1026** determine whether such a claim is sufficient to warrant the grant of a certificate of appealability. Based on recent Illinois Supreme Court caselaw, we conclude that it is not and, accordingly, deny the petitioners' request for a certificate of appealability.

**CleveHeidelberg** and Bruce Sharp are serving long prison sentences for the murder of two police

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

163 F.3d 1025
163 F.3d 1025
**(Cite as: 163 F.3d 1025)**

Page 3

officers. A jury convicted Heidelberg of killing a police officer while attempting to rob a "drive-in" theater; for which he is serving sentences of 4 2/3 to 14 years for the attempted armed robbery and 99 to 175 years for the murder. Sharp, using a sawed-off shotgun, shot and killed a police officer. After pleading guilty, Sharp received an indeterminate sentence of 30 to 125 years. Both Heidelberg and Sharp have been denied parole on several occasions. After the last denial, they filed this petition which the district court summarily dismissed. Heidelberg and Sharp filed a joint request for a certificate of appealability.

[2][3][4] It is well established that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). While there is no constitutional right to parole, a state may create a protected liberty interest in parole through its statutes and regulations governing the parole decision-making process. *See id.* at 12, 99 S.Ct. 2100. A state creates an expectation of release that rises to the level of a liberty interest within the meaning of the Due Process Clause if its parole system requires release whenever a parole board or similar authority determines that the necessary prerequisites exist. *See Board of Pardons v. Allen*, 482 U.S. 369, 376, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).[FN1]

> FN1. Though *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), criticizes the mandatory-discretionary dichotomy used in *Greenholtz* and *Allen*, it explicitly declined to overrule any previous case. *See Sandin*, 515 U.S. at 483 n. 5, 115 S.Ct. 2293. When "a precedent of [the United States Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving [the Supreme Court] the prerogative of overruling its

own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *see also Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C.Cir.1996).

[5] The Illinois parole release statute at issue in this case provides in relevant part:
(c) The Board shall not parole a person eligible for parole if it determines that:
(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or
(3) his release would have a substantially adverse effect on institutional discipline.

730 ILCS 5/3-3-5(c) (1998) (formerly Ill.Rev.Stat. ch. 38, ¶ 1003-3-5(c)). Instead of directing the Board when to release an eligible inmate, Illinois has stated the rule in the negative; the Board shall not release the inmate if one of the above conditions exists.

This court first considered Illinois' parole release statute in *Scott v. Illinois Parole and Pardon Bd.*, 669 F.2d 1185 (7th Cir.1982). Because the Illinois Supreme Court had not interpreted the parole statute prior to our decision in *Scott*, we looked to the Nebraska parole statute analyzed by the United States Supreme Court in *Greenholtz*. Noting certain similarities between the Nebraska statute and the Illinois statute, and looking to the rules promulgated by the Board for guidance, we held that Illinois' parole statute "creates a presumption that an eligible inmate will be paroled unless one of the specified grounds for denial is found to exist." *Scott*, 669 F.2d at 1190. In so holding, we concluded that Illinois' parole release statute provides an inmate with a legitimate expectation of parole and, therefore, entitles him to "some measure of constitutional protection." *Id.* We recognized, however, that "by stating its rule in the negative Illinois has left open the possibility that its statute can also be reasonably read as not creating

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

163 F.3d 1025
163 F.3d 1025
**(Cite as: 163 F.3d 1025)**

an expectancy of release on parole." *Id.* at 1189.

In *Hanrahan v. Williams*, 174 Ill.2d 268, 220 Ill.Dec. 339, 673 N.E.2d 251 (Ill.1996), **\*1027** the Illinois Supreme Court considered the same parole statute that we had analyzed in *Scott.* Noting that it was not bound by our decision in *Scott,seeid.* at 255-56, the Illinois Supreme Court concluded that the Board's decision to grant or deny parole is completely discretionary outside of the few instances when the denial of parole is mandatory. *Seeid.* at 255. The court explained,

[w]e believe that Illinois' statutory criteria and the Board's rules do not provide standards for release on parole sufficiently objective to allow a court to evaluate the Board's decision to deny parole. We thus conclude that the legislature, in drafting the statutory language, intended the Board to have complete discretion in determining whether to grant parole when the denial of parole is not mandated by statute.

*Id.*

[6] As the Illinois Supreme Court appropriately recognized, it was not bound by our holding in *Scott. SeeEcho, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1102 n. 1 (7th Cir.1997) (citing *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). We, however, are bound to follow a state's highest court's interpretation of its own state law. *SeeR.A.V. v. City of St. Paul*, 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359, 363 (7th Cir.1994) (citations omitted). Accordingly, we overrule *Scott* and, in accordance with the Illinois Supreme Court, hold that Illinois' parole statute does not create a legitimate expectation of parole.

Because Heidelberg and Sharp do not have a protected liberty interest in being granted parole, it follows that the petitioners' due process argument does not warrant the grant of a certificate of appealability. Similarly, the petitioners' other claims also fail to make the requisite substantial showing of the denial of a constitutional right.

Accordingly, we DENY petitioners' request for a certificate of appealability under 28 U.S.C. §§ 2253(c)(1)(A) & (c)(2).

C.A.7 (Ill.),1998.
Heidelberg v. Illinois Prisoner Review Bd.
163 F.3d 1025

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**E-FILED**
Thursday, 27 September, 2007  01:49:13 PM
Clerk, U.S. District Court, ILCD

RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.

CLEVE HEIDELBERG #C01521
(Full name and prison number)
(Include name under which convicted)

**PETITIONER**

. vs .

KENNETH R. BRILEY
(Warden, Superintendent, or authorized
person having custody of petitioner)

**RESPONDENT, and**

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)**

**ATTORNEY GENERAL OF THE STATE OF**

_____
(State where judgment entered)

CASE NO:

**03C 4997**

(Supplied by Clerk of this Court)

**JUDGE NORGLE**

**MAGISTRATE JUDGE LEVIN**

DOCKETED
JUL 2 1 2003

JUL 2 1 2003

Case Number of State Court Conviction:

70-Y-1976

**PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: __Circuit Court of Peoria County,__ Peoria, Illinois

2. Date of judgment of conviction: __December 15, 1970__

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   Murder & Attempted Robbery

4. Sentence(s) imposed: __99 to 175; and, 10 to 14 years concurrent.__

5. What was your plea? (Check one)     (A) Not guilty     ( X )
                                       (B) Guilty        (   )
                                       (C) Nolo contendere (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____

   _____

**EXHIBIT B**

## PART I – TRIAL AND DIRECT REVIEW

1.  Kind of trial: (Check one):        Jury (X)           Judge only (  )

2.  Did you testify at trial?    YES (  )            NO        (X)

3.  Did you appeal from the conviction or the sentence imposed? YES ( X   NO (  )

   (A)  If you appealed, give the

        (1)  Name of court:    Appellate Court of Illinois, 3rd District.

        (2)  Result:      Appeal denied.

        (3)  Date of ruling:    November 13, 1975

        (4)  Issues raised:      Same as presented in this action.

   (B)  If you did not appeal, explain briefly why not:

4.  Did you appeal, or seek leave to appeal, to the highest state court?  YES ( X      NO (  )

   (A)  If yes, give the

        (1) Result     Petition for Leave to Appeal Denied.

        (2) Date of ruling:    —   March 8, 1976

        (3) Issues raised:  Same as presented in this action.

   (B)  If no, why not: _____

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (  )   No (X)

   If yes, give (A) date of petition: _____  (B) date *certiorari* was denied:  _____

## PART II -- COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( X )  NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court:   Circuit Court of Peoria County, Peoria, Illinois

    B.  Date of filing:   October 19, 2001

    C.  Issues raised:   Same as presented in this action.




    D.  Did you receive an evidentiary hearing on your petition?    YES ( ) NO ( X )

    E.  What was the court's ruling?   Petition & Motions Denied.

    F.  Date of court's ruling:   October 29, 2001

    G.  Did you appeal from the ruling on your petition?    YES ( X ) NO ( )

    H.  (a) If yes,   (1) what was the result?   Appeal Denied.

                  (2) date of decision:   July 19, 2002

      (b) If no, explain briefly why not: _____

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

      YES ( X ) NO ( )

      (a) If yes,   (1) what was the result?   Petition for Leave to Appeal Denied

                  (2) date of decision:   December 5, 2003

      (b) If no, explain briefly why not: _____

3

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )    NO ( )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1. Nature of proceeding    habeas corpus

      2. Date petition filed    October 19, 2001

      3. Ruling on the petition    Denied.

      3. Date of ruling    October 29, 2001

      4. If you appealed, what was the ruling on appeal?    Yes, Appeal Denied.

      5. Date of ruling on appeal    July 19, 2002

      6. If there was a further appeal, what was the ruling ?    Petition for Leave to Appeal to Ill.S.Ct., Denied.

      7. Date of ruling on appeal    December 5, 2003

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
      YES ( )    NO (X)

   A. If yes, give name of court, case title and case number: _____

   _____

   B. Did the court rule on your petition? If so, state

      (1) Ruling: _____

      (2) Date: _____

**4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

**YES ( )    NO (X)**

If yes, explain: _____

_____

4

**PART III -- PETITIONER'S CLAIMS**

1.  State <u>briefly</u> every ground on which you claim that you are being held unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one    PROSECUTORIAL SUPPRESSION OF FINGERPRINT EVIDENCE *
     Supporting facts (tell your story <u>briefly</u> without citing cases or law):
                                        *se*
See pages (5a, 5b, 5c, 5d) attached hereafter for an Overview of this
case.

~~See: separately attached:  Petitioner's Brief & Arguments.~~

_____

_____

_____

_____


(B)  Ground two   PROSECUTORIAL BAD FAITH SUPPRESSION OF FINGERPRINT EVIDENCE*
     Supporting facts:           *se*
See pages (5a, 5b, 5c, 5d) attached hereafter for an Overview of this
case.

*See:  separately attached:  Petitioner's Brief & Arguments.

_____

_____

_____

_____

## OVERVIEW OF CASE

The claims in this petition present questions of fundamental fairness and plain justice.  Petitioner HEIDELBERG seeks the correction of the violation of his constitutional rights.  He has been held as a prisoner in the State of Illinois for 33 years for crimes of which he is actually innocent.  The litigation history of his claims stems from the deliberate suppression, lost or destruction of exonerating fingerprint evidence and his long struggle to uncover those acts and bring them before a Court of this magnitude to be set right.

The attempted armed robbery and the shooting death of a Peoria County Sheriff's Sergeant happened May 1970.  After a jury trial petitioner was convicted of those crimes and lengthy prison sentences were imposed on him.  Prior to and throughout his trial and appeals, he has denied any involvement in such crimes and maintains his innocence of them.

As state court records reveals; after such crimes were done in Belleville, Illinois, the suspect was car-chased to the City of Peoria. There, the car the suspect was driving crashed and he escaped from that area.  Within a couple of minutes of those events, an investigator for the county searched the recked car recovered from it one handgun; a pair of eyeglasses, keys and a portable radio.  On that same morning, the weapon and other items of evidence were taken to the FBI Laboratory for ballistics and fingerprint testing & examinations.

Petitioner formally requested discovery prior to trial, asking the State to produce any & all statements, documents and testing reports etc in its possession relevant & material to the case.

5a

When the State failed to comply with the discovery request, Petitioner made a specific complaint to the trial court regarding the refusal of the prosecution to give him a copy of the FBI Fingerprint Examination Report. In response to his charge that the report and the results of the fingerprint examinations were being kept from him, the prosecutor vowed to the Court it had no such report or results in his possession. Additionally, during the trial, Petitioner subpoenaed the FBI report from that agency in his attempt to secure the fingerprint evidence. Nevertheless, the examiner who conducted such fingerprint examination on the weapon and other items of evidence submitted to the FBI for testing did not respond to the subpoena and failed to appear at the trial with such report or to give testimony about his examination results.

Consequently, Petitioner's original appeal was denied. There, Petitioner was unable to support his appeal with any direct proof that the State had suppressed the FBI Fingerprint Report and he was unable at that time to present any evidence of the actual existence of said report. Thus, Appellate Court denied his claims of prosecutorial suppression of fingerprint evidence and of his actual innocence. It held that the mere 'inference' by defendant that a latent fingerprint report was made, and identified some third person, is based wholly on conjecture.

Posttrial investigations by Petitioner led to the discovery of JAMES CLARK. His written statement and signed confession of his responsibility for committing the attempted armed robbery & shooting of the police officer were obtained and filed with the trial court. Petitioner's motion to establish his actual innocence by that newly discovered evidence was denied without a hearing. In the original appeal, the Appellate Court held that the State presented overwhelming evidence of guilt and

5b

the trial court did not err when it denied relief to defendant based on James Clark's confession.

Since his trial, Petitioner has sought relief from his erroneous imprisonment from the Parole Board on a request for pardon. He has contacted the FBI in failed efforts to obtain the Fingerprint Examination Report. And, over the years, he has made repeated attempts to get the Peoria County State's Attorney and the Sheriff's office to voluntarily produce the report and/or the information it contains regarding the results of the FBI's examinations on the gun & other items of evidence.

It was only during the litigation of the civil matter:  <u>HEIDELBERG vs. HAMMER,</u> (a case which involved and concerning the exact same issues now before this Honorable Court) was Petitioner was finally able to obtain actual proof regarding the suppression of the Fingerprint Examination Report. In that, during the discovery stage of that litigation, the defendants were required and did produce a letter, dated June 19, 1970, addressed to ROBERT CONE of the Peoria Sheriff's Office, from the FBI. Within the letter it is stated and clearly indicated:  "You are being advised by separate report concerning the results of the latent fingerprint examinations". In this petition, Petitioner argue that the FBI letter establishes actual proof the State got the Report & the results of the latent fingerprint examinations prior to his state trial. And, that the letter is evidence of prosecutorial suppression and bad faith because the State had the Report in its possession when it refused Petitioner's requests for it and when the prosecutor lied to the Court about having it.

5c

In October 2001, using the opportunity a new state statute afforded him; Petitioner reopened his case by filing a Motion for fingerprint Testing.  He stated therein that a comparison of his prints with those possibly discovered & identified during the FBI examinations would produce potential definitive evidence of his actual innocence.  Petitioner also motioned for the fingerprint report be disclosed to facilitate' the comparison testing.  That the Report can now be disclosed now that its actual existence is known.  The trial court, in denying his motions without a hearing, held that it believed that such evidence of innocence that could be produced by fingerprint testing would not negate eyewitness testimony of Petitioner's guilt.

Concomitantly, Petitioner filed a State Habeas Corpus Petition and therein raised his claim that the communication letter from the FBI to ROBERT CONE of the Sheriff's Department about the results of the finger-print examination report, that were suppressed & only obtained since his direct appeal in 1971, constituted compelling proof of his actual innocence. Such that it shows that the State effectively suppressed relevant & material fingerprint evidence and it demonstrates that the Report itself was deliberately suppressed, lost or destroyed to obtain a conviction against Petitioner.  Nevertheless, the trial court denied the State Habeas Corpus action without a hearing.

In his last appeal respecting his claims, the Illinois Appellate Court rejected both Petitioner's Motion for Fingerprint Testing and his Habeas claims as unfounded conjecture.  It held that proving whether and whose fingerprints were on the gun would not establish defendant's guilt or innocence of the crimes charged.  At best, it concluded, comparison of defendant's prints with the possible ones on the gun would only impair a

5d

a nonessential piece of physical evidence in the States case.

Likewise Petitioner sought relief from the State's highest court. There he again fully argued his claims, citing provisions of the United Satates Constitution; the relevant federal decisions and employing constitutional analysis regarding the plain facts in the case. In response, the Illinois Supreme Court denied Petitioner's Petition for Leave to Appeal and adopted the views expressed and held by the lower courts.

5e

(C) Ground three _____
    Supporting facts:

_____

_____

_____

_____

_____

_____

_____

(D) Ground four _____
    Supporting facts:

_____

_____

_____

_____

_____

_____

_____

2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
    YES (X)    NO ( )

3.  If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:

_____

_____

6

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _____ _____ _Peoria PD_

(B) At arraignment and plea _____ _____ _Peoria PD_

(C) At trial _Jack C. Vieley_

(D) At sentencing _Jack C. Vieley_

(E) On appeal _Appellate Defender's office_

(F) In any post-conviction proceeding _None_

(G) Other (state): _None_

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ☒

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

    WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____
                (Date)                                    _____
                                                          Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Cleve Heidelberg_ #C01521
(Signature of petitioner)
_C01521_
(I.D. Number)
_P.O. Box 112, Joliet, Ill. 60434_
(Address)

REVISED 01/01/2001

7

E-FILED
Thursday, 27 September, 2007  01:49:36 PM
Clerk, U.S. District Court, ILCD

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | CHARLES R. NORGLE SR. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4997 | **DATE** | 9-16-03 |
| **CASE TITLE** | U.S. ex rel. Cleve Heidelberg (IDOC #C-01521) v. Kenneth R. Briley, Warden | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    The petition for writ of habeas corpus is summarily dismissed as untimely under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, terminating case.  Any pending motions are denied as moot.

*Charles R. Norgle*

(11) ■    For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| KS | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT. 03 SEP 16 PM 4:43 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States ex rel. | ) | |
| | ) | |
| CLEVE HEIDELBERG, | ) | |
| | ) | No. 03 C 4997 |
| Petitioner, | ) | |
| | ) | Judge Charles R. Norgle, Sr. |
| v. | ) | |
| | ) | |
| KENNETH R. BRILEY, Warden | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

CHARLES R. NORGLE, SR., District Judge:

Petitioner Cleve Heidelberg filed this petition for habeas corpus under 28 U.S.C. § 2254 challenging his conviction for murder and armed robbery entered on December 15, 1970, in the Circuit Court of Peoria County, Illinois. On November 13, 1975, the Illinois Appellate Court affirmed his conviction and sentence. At the same time, the Appellate Court affirmed the denial of a post-conviction petition filed February 23, 1971, in which Heidelberg presented the affidavit of James Clark, who testified that he, not Heidelberg, had committed the crimes of which Heidelberg had been convicted. *People v. Heidelberg*, 33 Ill.App.3d 574, 338 N.E.2d 56 (3rd Dist. 1975). The Illinois Supreme Court denied leave to appeal on March 8, 1976.

On October 19, 2001, Heidelberg filed a combined "Motion For Fingerprint Testing" and "Petition For Writ Of Habeas Corpus" in the Circuit Court of Peoria County. Invoking 735 ILCS 5/116-3, Heidelberg asked that the court order re-examination of "latent fingerprint evidence," the photographs and "lifting tapes" used to obtain latent fingerprints from the murder weapon, Heidelberg's car, and other items known to have been touched by the perpetrator, claiming that they would yield material evidence showing Heidelberg's innocence of the crime. Heidelberg also sought immediate release on the ground that the FBI had given the prosecution its report of a fingerprint examination of the murder weapon, but this fact was not disclosed to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Both motions were denied on October 29,

2001, the Illinois Appellate Court affirmed on July 19, 2002, and the Illinois Supreme Court denied leave to appeal on December 5, 2002. On July 18, 2003, Heidelberg filed this petition for writ of habeas corpus.

Rule 4 of the Rules Governing Section 2254 Cases requires the court to review the petition before ordering the state to respond. If it plainly appears from the face of the petition and exhibits that the petitioner is not entitled to relief, it is to be dismissed. It is clear that Heidelberg is not entitled to relief because the petition is obviously untimely. What is less clear is whether this court has jurisdiction.

## I. Jurisdiction

This is not Heidelberg's first habeas corpus petition in this court. On July 17, 1997, Heidelberg and another Illinois state prisoner filed a petition for habeas corpus under 28 U.S.C. § 2254, *Heidelberg v. Illinois Prisoner Review Board,* No. 97 C 5168, asserting that the Illinois Prisoner Review Board had denied them due process of law in rejecting their applications for parole. On February 4, 1998, this court summarily dismissed the petition under Rule 4. When petitioners sought leave to appeal, the Court of Appeals denied a certificate of appealability under 28 U.S.C. § 2253(c), affirming that under Illinois law, as declared by the Illinois Supreme Court in *Hanrahan v. Williams*, 174 Ill.2d 268, 673 N.E.2d 251 (1996), parole decisions are committed to the Board's discretion; as a consequence, petitioners had no legitimate expectation of parole that would support a due process claim. *Heidelberg v. Illinois Prisoner Review Bd.*, 163 F.3d 1025 (7th Cir. 1998), *cert. denied*, 528 U.S. 955 (1999).

The prior petition attacked only the denial of parole, not Heidelberg's conviction or sentence, and raised issues completely different from those raised here. The prior petition is relevant, however, because a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C § 2244(b)(3)(A), provides that a "second or successive" habeas corpus application under § 2254 may not be filed in the district court without the prior authorization of the Court of Appeals. Because leave has not been granted, if this is a "second or successive"

2

petition, it must be dismissed for lack of jurisdiction. *In re Page,* 170 F.3d 659, 661 (7th Cir. 1999).[1]

Federal prisoners face a similar bar to "second or successive" post-conviction motions under 28 U.S.C. § 2255, but § 2255 is limited to challenges to the original conviction or sentence -- "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Seventh Circuit held in *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998), that a federal prisoner challenging the computation or execution of his sentence (which includes the grant or conditions of parole) may not proceed under § 2255, but must proceed under the general habeas corpus statute, 28 U.S.C. § 2241. If Heidelberg were a federal prisoner, this could not be a "second or successive" motion under § 2255, because the first petition would have been deemed to have been brought under § 2241.

---

[1] 28 U.S.C. § 2244(b) provides:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

*********

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

3

But Heidelberg is a state prisoner, and § 2254 is not limited to challenges to a prisoner's conviction and sentence, but embraces any claim that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Recognizing the breadth of that language, the Seventh Circuit has held that § 2254 is the sole avenue by which convicted state prisoners may challenge their custody, *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000), bringing the limitation of § 2244(b) into play.[2] In enacting § 2244(b), Congress was apparently unaware of the broader scope of § 2254.[3] Consequently, Congress gave no consideration to whether a challenge to a prisoner's custody that did not attack the validity of the original conviction would be counted together with one that did, making the later-filed petition "second or successive."

To prevent clearly unintended and perhaps unconstitutional consequences, courts have declared that "second or successive" is a term of art not to be understood literally. A prior petition dismissed on procedural grounds without reaching the merits does not make a renewed petition "second or successive." *See Slack v. McDaniel*, 529 U.S. 473, 485-86 (2000)(first petition dismissed for failure to exhaust state remedies); *Benton v. Washington*, 106 F.3d 162, 165 (7th Cir. 1996)(first petition dismissed for nonpayment of filing fee). Nor does a petition challenging an original conviction or sentence affect the filing of a second petition challenging a new sentence imposed after resentencing. *Walker v. Roth*, 133 F.3d 454 (7th Cir. 1997). The Seventh Circuit recently summarized the rule as follows:

> For purposes of § 2244(b), we do not count previous petitions that were dismissed for technical or procedural deficiencies that the petitioner can cure before refiling. . . . In these cases the petitioners are able to rectify the problems and then refile their petitions for a merits determination of the substantive claims.

---

[2] In the Sixth and Tenth Circuits, a habeas petition filed by a state prisoner that does not challenge his conviction or sentence, but asserts that the Constitution was violated by some other state action affecting his custody, it is treated as brought under § 2241, as in the case of federal prisoners. *See Greene v. Tennessee Dept. of Corrections*, 265 F.3d 369, 371 (6th Cir. 2001); *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).

[3] Section 2244(b), like the parallel provision in § 2255, permits a "second or successive" petition based on a "factual predicate" "that could not have been discovered previously through the exercise of due diligence," but only if the predicate facts would establish that the petitioner should not have been convicted of "the underlying offense." The "factual predicate" of a claim can be stretched to include the petitioner's conviction of a disciplinary offense, although it is senseless to speak of diligence in "discovering" it. But while "underlying offense" can be construed to mean a disciplinary violation, in the case of denial of parole the only "underlying offense" is the original crime.

> If, however, a petition is resolved in a way that satisfies a petitioner's one "full
> and fair opportunity to raise a [federal] collateral attack," *O'Connor* [*v. United States*],
> 133 F.3d at 550, then it does count for purposes of § 2244(b).

*Altman v. Benik*, 337 F.3d 764, 766 (7th Cir. 2003).

Heidelberg filed two such abortive petitions in 1970 in the Central District of Illinois at Peoria, but we are not concerned with them here.[4] His 1997 petition challenging his parole was decided on the merits, so there is no question that it "counts." The question is whether it counts in the same column, as it were, as a petition challenging his conviction. Heidelberg challenged a parole decision by the Prisoner Review Board, but the same question would apply to a habeas petition challenging an administrative decision revoking a prisoner's "good time" credit. Each is an administrative determination affecting the duration of a prisoner's incarceration, depending for its validity on the original conviction, yet resting on legal and factual grounds independent of it. *Harris v. Cotton*, 296 F.3d 578, 579 (7th Cir. 2002), held that the "second or successive" limitation of 28 U.S.C. § 2244(b) applies to petitions challenging loss of good time credit, but since both petitions in *Harris* challenged the same loss of credit, *Harris* did not decide whether a petition challenging denial of parole or loss of good time credit is counted with a petition challenging the underlying conviction.

The Seventh Circuit has stated that "the count [in determining whether a petition is "second or successive"] restarts with each new judgment," *Johnson v. United States*, 196 F.3d 802, 804 (7th Cir. 1999), and that "one substantive chance *per judgment* is the norm under § 2255 ¶ 8 and § 2244(b)," *Dahler v. United States*, 259 F.3d 763, 764 (7th Cir. 2001)(emphasis in original). If "judgment" is understood loosely to mean an official ruling on a given set of facts, challenges to parole or loss of good time credit are "judgments" to be counted separately from challenges to the prisoner's conviction. But if "judgment" is understood in the strict sense, as a final ruling by a court, the rule cuts the other way, because an administrative agency is not a court. *See White v. Indiana Parole Board*, 266 F.3d 759, 764-65 (7th Cir. 2001).

---

[4] No. P-3205 was filed and dismissed November 17, 1970, at the beginning of Heidelberg's trial. Following his conviction, Heidelberg was denied leave to file another petition in forma pauperis on December 30, 1970, Misc. No. 70-6, the court noting he had obviously failed to exhaust state remedies.

5

Other circuits that treat challenges to the execution of a state prisoner's sentence as having been brought under § 2254 have taken a different approach, holding that a second § 2254 petition challenging the execution of a prisoner's sentence -- denial of parole or revocation of good time credit -- is not "second or successive," provided the petitioner could not have raised the claims asserted in the second § 2254 petition when he filed his initial petition challenging his conviction. *See James v. Walsh,* 308 F.3d 162, 167-68 (2d Cir. 2002); *Crouch v. Norris*, 251 F.3d 720, 723-24 (8th Cir. 2001); *In re Cain*, 137 F.3d 234, 235-36 (5th Cir. 1998). In so holding, these courts found that Congress had not intended to preclude petitioners who had challenged their convictions from subsequently challenging constitutional violations affecting the duration of their confinement. These courts looked to the pre-AEDPA judge-made doctrine of "abuse of the writ" in interpreting the term "second or successive." Under the abuse of the writ doctrine, a subsequent petition is "second or successive" when it raises a claim that was, or could have been, raised in an earlier petition. *See McCleskey v. Zant,* 499 U.S. 467, 493-95 (1991).

The Seventh Circuit, however, has taken the position that AEDPA totally supplanted the "abuse of the writ" doctrine. *In re Page*, 179 F.3d 1024, 1025-26 (7th Cir. 1999). Once a § 2254 petition has been decided on the merits with respect to the "judgment" in question, any new petition with respect to that judgment may only be filed by permission of the Court of Appeals, without reference to notions of "abuse of the writ." Accordingly, whether the present petition is "second or successive" turns on whether Heidelberg's parole denial was a separate "judgment," rather than whether he could have brought his claims challenging his conviction at the same time, although it appears he could have done so.

The court believes the Seventh Circuit would rule that Heidelberg's parole ruling counted as a separate "judgment" for purposes of § 2244(b). "Judgment" can be understood broadly to include administrative rulings without doing violence to the Seventh Circuit's reasoning, and it appears the Seventh Circuit tacitly treats as "judgments" administrative revocations of good time credit.[5/] Accordingly, we deem Heidelberg's first petition as having challenged a separate

---

[5/] To the court's knowledge, the Seventh Circuit has not suggested that a habeas petition challenging revocation of good time credit is "second or successive" because of a prior petition challenging petitioner's conviction.

"judgment," the present petition is not "second or successive," and this court has jurisdiction -- to dismiss it as untimely.


## II.  Timeliness

AEDPA enacted a one-year limitation period for filing a petition for habeas corpus:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

  (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Because Heidelberg's conviction became final before the effective date of AEDPA, April 23, 1996, the limitations period began to run on that date, *Johnson v. McCaughtry*, 265 F.3d 559, 562 (7th Cir. 2001), and expired one year later.

This petition could be timely only if subsection (1)(D) applied:  if Heidelberg's claim were based on previously unavailable evidence, the limitations period would have been restarted at the time the evidence could have been discovered with reasonable diligence.  Assuming that subsection (d)(2) would have tolled the limitations period while Heidelberg sought relief in state court, the new evidence would have had to have been discoverable no later than five months before Heidelberg filed his second post-conviction proceeding on October 19, 2001, because this petition was filed seven months after that proceeding terminated.

Heidelberg asserts, Pet. Br. at 14, that his second post-conviction proceeding presented "newly discovered evidence" showing that the FBI had given the prosecution its report of a fingerprint examination of the murder weapon, a report not disclosed to the defense. Heidelberg states he discovered this evidence "during the litigation of the civil matter *Heidelberg v. Hammer*," *id.* at 13. Heidelberg is silent as to just when this occurred, but it was at least twenty-one years ago.[6]

Nothing in the petition suggests that Heidelberg has any evidence that could not have been presented before 1997. All that is new is the Illinois' courts' recent refusal to order a re-examination of the physical evidence in Heidelberg's case, assuming it still exists. Denial of a new opportunity to discover evidence is not discovery of new evidence. Assuming that Heidelberg's second post-conviction proceeding filed in 2001 qualified as a "properly filed application for State post-conviction or other collateral review" under 28 U.S.C. § 2244(d)(2), it could have no effect after the limitations period expired in 1997. The petition is accordingly dismissed as untimely.


IT IS SO ORDERED.


ENTER:

*Charles R. Norgle*

CHARLES R. NORGLE, SR., District Court Judge


DATED: ___9-16-03___

---

[6] Heidelberg's suit against Lawrence Hammer and others was filed in this court in 1973, transferred to the Central District of Illinois at Peoria, *Heidelberg v. Calkins*, No. 73-20 (C.D.Ill.), and dismissed in 1975. Following the Seventh Circuit's reversal in 1978, *Heidelberg v. Hammer*, 577 F.2d 429 (7th Cir. 1978), it was transferred to the Springfield Division, *Heidelberg v. Hammer*, No. 78-3159 (C.D.Ill.), and ultimately dismissed April 5, 1982.

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

CLEVE HEIDELBERG

v.

KENNETH R. BRILEY, WARDEN

**JUDGMENT IN A CIVIL CASE**

Case Number: 03 C 4997

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐     Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the petition for writ of habeas corpus is dismissed.

Michael W. Dobbins, Clerk of Court

Date: 9/16/2003

Eric Fulbright, Deputy Clerk